**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**MUHAMMAD ALI ENTERPRISES LLC,**

*Plaintiff,*

v.

**235 TIPTOP STORE,** *et al.,*

*Defendants.*

SEALED

Civil Action No.
1:25-cv-02140-SDG

**TEMPORARY RESTRAINING ORDER,
ASSET FREEZE ORDER, AND ORDER TO SHOW CAUSE**

**THIS CAUSE** has come before the Court on Plaintiff Muhammad Ali

Enterprises LLC's Motion for *Ex Parte* Temporary Restraining Order, Asset Freeze

Order, and Order to Show Cause [ECF 7] pursuant to Rule 65 of the Federal Rules

of Civil Procedure, and 15 U.S.C. §§ 1114, 1116, and 1125(a). As discussed below,

Plaintiff has satisfied the requirements for the issuance of a temporary restraining

order and the additional relief requested.

**I.     APPLICABLE LEGAL STANDARDS**

A court will issue a temporary restraining order where the requesting party

demonstrates the following four factors: (1) it has a substantial likelihood of

success on the merits; (2) the moving party will suffer irreparable injury if the

order is not granted; (3) the threatened injury to the plaintiff outweighs the harm

the relief would inflict on the non-movant; and (4) entry of the order would serve

the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, No. 1:18-cv-141-WSD, 2018 WL 566510, at *4 (N.D. Ga. 2018) (applying four-part test and granting preliminary injunction in a Lanham Act case).

Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit demonstrate the moving party will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing the reasons why notice should not be required. FED. R. CIV. P. 65(b)(1). Where a defendant's identity is known and notice can be feasibly given, the court may still grant an *ex parte* seizure order if providing notice to the defendant would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Commc'n, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249–50 (S.D. Fla. 1982) (citing cases). The justification for an *ex parte* seizure order is even more compelling where a significant amount of evidence pertaining to the counterfeiting activity is in electronic form, and therefore subject to quick, easy, and untraceable destruction

2

by the defendants. *Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341, at *2 (S.D. Fla. 2007); *see also Chanel, Inc. v. Chanel255.ORG*, 2012 WL 12845630, at *5 (S.D. Fla. 2012).

A request for permanent injunctive relief and disgorgement of the defendant's profits from counterfeiting pursuant to 15 U.S.C. § 1117, as well as a request for an award of attorneys' fees, are requests for relief in equity. Requests for equitable relief invoke the Court's inherent equitable powers to order preliminary injunctive relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court, having reviewed Plaintiff's Motion for a Temporary Restraining Order, Memorandum of Law, and supporting declarations and evidence, makes the following findings of facts and conclusions of law:

### A.   Plaintiff's Trademarks

1)   Plaintiff owns all intellectual property, including all trademark rights, of Muhammad Ali's estate and is the current owner of the global trademark

portfolio of the late Muhammad Ali. Plaintiff owns numerous federal trademark registrations and common law rights for its trademarks, including ALI, CASSIUS CLAY, FLOAT LIKE A BUTTERFLY, STING LIKE A BEE, GREATEST OF ALL TIME, MUHAMMAD ALI, and many others (collectively, "Plaintiff's Marks").

2)    Plaintiff owns numerous federal trademark registrations for Plaintiff's Marks, including, but not limited to, the following:

| Mark | U.S. Federal Reg. Nos. |
|---|---|
| ALI | 2845065 2683909 3778473 4031813 |
| CASSIUS CLAY | 3779469 |
| FLOAT LIKE A BUTTERFLY, STING LIKE A BEE | 3895589 4071330 |
| MUHAMMAD ALI | 3732734 3772766 3897550 3968626 5904910 |
| MUHAMMAD ALI SIGNATURE (design) | 3779463 |
| RUMBLE IN THE JUNGLE | 3617708 3982443 |
| THE GREATEST | 4105881 |
| THE GREATEST OF ALL TIME | 3935776 |

4

B.     **Defendants' Advertising and Sale of Counterfeit and Infringing Goods.**

3)     Each Defendant is believed to be a non-U.S. entity, association, or individual, located in China or elsewhere in Asia, each of whom sells, offers for sale, distributes, and/or advertises goods through its virtual storefronts on various e-commerce marketplaces, such as Alibaba, AliExpress, Amazon, DHGate, eBay, Etsy, Joom, Printerval, Temu, Walmart, and Wish (each a "Marketplace" and collectively the "Marketplaces").

4)     Each Defendant uses in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution, or advertising of goods on their respective virtual storefronts on the Marketplaces ("Counterfeit Products").

5)     Each Defendant has offered Counterfeit Products for sale throughout the United States, including in Georgia. Each Defendant is willing to engage in commercial transactions with residents of the United States and ship Counterfeit Products to the United States.

6)     Each Defendant also accepts payment for its goods in U.S. dollars through, for example, a variety of payment processors, banks, escrow services, money transmitters, the Marketplaces themselves, and other companies that engage in the processing or transfer of money of or on behalf of Defendants by

5

virtue of their operation of virtual storefronts on any of the Marketplaces (collectively referred to hereafter as, "Financial Institutions").

7)    Defendants are subject to the personal jurisdiction of this Court pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, and exercising jurisdiction over Defendants is consistent with the United States Constitution and its laws. Based on the facts set forth above, it is reasonable for Defendants to expect that they may be sued in the United States. *Sec. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1542-47 (11th Cir. 1997) (holding that court had personal jurisdiction over foreign corporation where defendant placed ads for securities in two airlines' in-flight magazines, mailed offering materials directly to U.S. investors, and maintained U.S. bank accounts to receive payment from investors); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–58 (11th Cir. 2013) (affirming jurisdiction over non-resident who sold counterfeit products through fully-interactive website).

8)    Plaintiff has never authorized any of Defendants to use any of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution, or advertising of any goods in the United States.

9)    Plaintiff has established that the Counterfeit Products offered for sale by Defendants are not genuine and that each Defendant is using one or more of

6

Plaintiff's Marks or a colorable imitation of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution, or advertising of Counterfeit Products.

10)   Plaintiff has established that it is substantially likely to succeed on the merits of its trademark infringement claims:

a)   Plaintiff owns valid federal trademark registrations for Plaintiff's Marks;

b)   The Counterfeit Products that Defendants are advertising and offering for sale are not genuine;

c)   Defendants are using spurious marks that are identical with, or substantially indistinguishable from, one or more of Plaintiff's Marks or colorable imitations of Plaintiff's Marks in commerce on or in connection with the sale, offer for sale, distribution, and/or advertising of the Counterfeit Products;

d)   Defendants' use of Plaintiff's Marks or colorable imitations of Plaintiff's Marks is likely to cause consumer confusion, mistake, or deception as to the source or origin of the Counterfeit Products; and

e)   Alternatively and/or additionally, each Defendant is using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion,

or to cause mistake, or to deceive, as to the affiliation, connection, or association of each Defendant with Plaintiff, or as to the origin, sponsorship, or approval of each Defendant's goods or commercial activities by Plaintiff.

11) Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm because Plaintiff is seeking a temporary restraining order and has demonstrated a likelihood of success on the merits. Because Plaintiff has demonstrated a likelihood of success on the merits, it is automatically entitled to a presumption of irreparable harm, thereby satisfying the second factor of the temporary restraining order analysis.

12) Even in the absence of the rebuttable presumption, Plaintiff has shown that it is likely to suffer irreparable harm if an injunction does not issue. The proliferation of counterfeit and/or infringing copies of Plaintiff's goods erodes the distinctiveness of Plaintiff's Marks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit and infringing goods, the sale of inferior counterfeit or infringing goods by Defendants will have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with Plaintiff's Marks. This is sufficient to establish a likelihood of irreparable harm. *Noorani Trading Inc. v. Bijani*, Civ. A. No. 1:17-cv-1344-LMM, 2017 WL 8292437, at *9 (N.D. Ga. May 4, 2017). The widespread and

unauthorized use of Plaintiff's Marks in the marketing, offering for sale, and sale of counterfeit and/or infringing goods threatens the extensive goodwill associated with Plaintiff's business and Plaintiff's Marks, and will continue to cannibalize the sale of Plaintiff's genuine goods. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction. *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, No. 17-cv-2789, 2017 WL 8942387 at *3 (N.D. Ga. 2017); *Ferrellgas Partners, L.P.*, 143 F. App'x 180, 190 (11th Cir. 2005); *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.").

13)    It is likely that Plaintiff will suffer immediate and irreparable loss, damage, or injury unless Plaintiff's request for *ex parte* relief is granted:

a)    It is likely that Defendants will continue to sell Counterfeit Products through their virtual storefronts on the Marketplaces in the absence of the requested TRO;

b)    As a result, it is likely that consumers will continue to be misled, confused, and disappointed by the quality of these products, thereby significantly and irreparably damaging Plaintiff's valuable goodwill; and

9

c)      Plaintiff will continue to suffer lost sales of genuine products as the result of the lower-cost Counterfeit Products offered for sale by Defendants.

14)     The balance of harms favors Plaintiff. If the TRO is denied, Plaintiff will continue to suffer the above-mentioned irreparable harm to its reputation and the goodwill associated with Plaintiff's Marks. On the other hand, enjoining Defendants from selling counterfeit and/or infringing goods poses little to no risk of damaging the goodwill, if any, associated with the Defendants. Any harm Defendants may suffer is purely monetary and is therefore compensable, unlike the harm that Plaintiff will continue to suffer.

15)     Plaintiff has further demonstrated that this TRO should be granted *ex parte*. If Plaintiff provides Defendants notice of its application for TRO, Defendants are likely to delete their existing virtual storefronts on the Marketplaces, transfer any ill-gotten gains away from the Marketplaces, hide their identities, cover up evidence of their infringing activities, and shield their ill-gotten assets in a concerted effort to avoid liability and prevent Plaintiff from achieving a meaningful recovery, including financial compensation and permanent injunctive relief. Foreign parties that sell Counterfeit Products online often "disappear" when notified that they are being pursued.

16)   Granting Plaintiff an *ex parte* TRO is also in the public's interest. It will prevent consumer confusion in the marketplace and remove from the stream of commerce Counterfeit Products of unknown and likely inferior quality and composition, thereby preventing consumer harm, confusion, mistake, and deception.

17)   Plaintiff has requested a permanent injunction and recovery of Defendants' ill-gotten profits from their sale of Counterfeit Products pursuant to 15 U.S.C. § 1117(a).

18)   By requesting equitable relief, Plaintiff has invoked this Court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss*, 51 F.3d at 987.

19)   Defendants are likely to destroy evidence of their counterfeiting activities, such as evidence regarding their virtual storefronts and payment processing histories on the Marketplaces and other Financial Institutions, as well as hide and/or transfer any ill-gotten proceeds from the sale of Counterfeit Products, unless those assets are frozen or otherwise restrained.

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for *Ex Parte* Temporary Restraining Order, Asset Freeze Order, and Order to Show Cause is **GRANTED** as follows:

1)      Each Defendant (as reflected on the attached Exhibit A), its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to temporarily:

a)      Cease and refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any Counterfeit Products;

b)      Cease and refrain from manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods bearing Plaintiff's Marks, or any confusingly similar trademarks, other than genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors;

c)      Cease and refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Counterfeit Products;

d)   Cease and refrain from using Plaintiff's Marks, or any confusingly similar trademarks, on or in connection with any virtual storefront that any Defendant may own, operate, or control on any Marketplace;

e)   Cease and refrain from any and all use of Plaintiff's Marks, or any confusingly similar trademarks, as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to virtual storefronts registered, owned or operated by any Defendant on any Marketplace; and

f)   Cease and refrain from altering, disabling, closing, or transferring ownership of any virtual storefront on any Marketplace during the pendency of this Action, or until further Order of the Court.

2)   For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its sale, offer for sale, distribution, and advertising of Counterfeit Products through its virtual storefronts located on the Marketplaces.

13

3)      All Financial Institutions that receive actual notice of this Order shall immediately attach and freeze all funds in any accounts owned, controlled, utilized by, or associated with Defendants and otherwise prohibit the transfer of any funds out of any such accounts and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account at the Marketplace or the respective Financial Institution for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained, and/or located exclusively within the United States.

4)      Within seven days of receiving actual notice of this Order, all Financial Institutions shall provide a report to Plaintiff for each Defendant having any account with any Financial Institution, the report to include, at a minimum, the following information:

a)      Legal name and email address of each Defendant;

b)      Current account balances and amount of funds attached, frozen, and being held in trust pursuant to this Order; and

c)      Identity of all financial accounts linked to or associated with each Defendant's account associated with the virtual storefronts on the Marketplaces, or from or to which funds have been transferred from the attached accounts, including the name of the Financial

14

Institution, account numbers, routing numbers, and other relevant data to allow Plaintiff to seek further application of this Order.

5)      No funds restrained by this Order shall be transferred or surrendered by any Financial Institution or Marketplace for any purpose (other than pursuant to a chargeback made pursuant to the Financial Institution's or Marketplace's security interest in the funds) without the express authorization of the Court.

6)       Upon receipt of notice of this Order, each Marketplace on which a Defendant maintains a virtual storefront or account is ordered to immediately:

a)      Provide to Plaintiff the name and email address of each Defendant having an account or store on the Marketplace;

b)      Freeze all funds held or received by the Marketplace for any Defendant's benefit; and

c)      Disable each Defendant's virtual storefronts on the Marketplaces and any accounts associated with each Defendant and cease providing any services to Defendants.

7)      Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

8)      Plaintiff is not currently required to post a bond or other security. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). However, any Defendant may appear and immediately

15

challenge this portion of the Order by providing the Court with a reasonable estimation of its potential lost sales, along with supporting documentation sufficient to allow the Court to decide what an appropriate amount of surety would be. Plaintiff will then have one week in which to file a response.

9)      This Order shall remain in effect for fourteen days unless the Court for good cause extends the Order for a period not to exceed fourteen days, in which case the Order shall remain in effect until the date of the hearing or until such further date as set by the Court or stipulated to by the parties.

10)      This Order shall apply to Defendants, their associated virtual storefronts on the Marketplaces, and any other websites, domain names, seller identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale, and selling any Counterfeit Products at issue in this action and/or unfairly competing with Plaintiff.

11)      Any Defendant or Financial Institution account holder may petition the Court to modify the asset restraint set out in this Order.

12) **A hearing is set before this Court on Thursday, <u>May 8, 2025</u> at <u>3:00PM EDT</u>**. Parties wishing to appear may do so either in person at the Richard B. Russel Building, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, Courtroom 1706; or via ZOOM platform, login credentials as follows: **Join ZoomGov**

**Meeting** https://ganduscourts.zoomgov.com/j/1602856271 **Meeting ID: 160 285 6271 Passcode: 43085**. During this hearing, Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, and the Court will hear argument on Plaintiff's requested preliminary injunction. Defendants shall appear and show cause why said preliminary injunction should not issue.

13)    **SERVICE BY ALTERNATE MEANS:** After Plaintiff's counsel has received confirmation that the Financial Institutions have restrained Defendants' funds as directed herein, Plaintiff shall serve copies of the Complaint, Motion for TRO, and this Order on each Defendant by electronic mail using email addresses provided by the Marketplaces, Financial Institutions, or Defendants themselves or by other electronic means reasonably calculated to provide notice to each Defendant.

14)    Any response or opposition to Plaintiff's motion for preliminary injunction must be filed with the Court and served on Plaintiff's counsel two days before the hearing described in Paragraph 12, along with Proof of Service. **Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), and the Court's inherent authority**.

17

This Order shall become effective on **April 24, 2025 at 4:00 pm EST**.

This Temporary Restraining Order expires in fourteen days unless extended for good cause.

**SO ORDERED** this 24th day of April, 2025.

_____
Steven D. Grimberg
United States District Judge

## EXHIBIT A

| NAMED DEFENDANTS SUBJECT TO THIS ORDER |
|---|
| 235 TipTop Store |
| A flower for men |
| ABKIQJXB |
| abodejoy |
| Adore Happy |
| Ageunitywear |
| Ah Le Clothes Shop Three |
| AHRAN INDUSTRIES |
| AKJHVDJE |
| Ali MEIMEI Store |
| ALIEX PREESS B119 Store |
| AlllllllllIIIIIIIIIIIIIIIIIlllllllllllllllIIIIIIIIIII |
| AlllllllllIIIIIIIIIIIIIIIIIllllllllllllllllIIIIIIIIII |
| Ant Creative |
| Ao Figure Store |
| Artful pbn ART |
| ASDDSASA |
| AttireAlchemy |
| AZMUOUTOP |
| Babaite Simple Case 308 Store |
| Babite |
| Badxiaodian |
| Bathing Bear Store |
| BBBBWanxin |
| Bfqiushunlaibaihuo |
| BNNV2 Store |
| Boutique Clothing SB1 Store |
| Build the World-y |
| C910418'shop |
| Captain STUDlO |
| CH Tshirt |
| championshipringshop |

19

| NAMED DEFENDANTS SUBJECT TO THIS ORDER |
|---|
| changy62 |
| chenaihua |
| CHENYINGAAA |
| ChicWave Cup |
| CHOUU |
| CMSJ TRADE |
| Colorful Canvas Shop Store |
| Colorful Fads |
| Cool Tee Boutique |
| CooTeen |
| Corals tiger |
| Crazy Decorate |
| CT Poster |
| Customized Trend hat Shop |
| CYF Home 004 Store |
| Da Hope Clothing Factory Store Store |
| Dante fashion |
| DARLEEN |
| Dex and |
| Distinct Custom Shop |
| DIYS126 Store |
| DLKOIJXC |
| dong974 |
| Dream big clothing eight |
| Dreamy Blankets |
| dusileiyigua6 |
| DYIQWJHB |
| E I G H T |
| Essential trendy clothing |
| Fashion Apparel LLC |
| Fashionable trendsetter clothing |
| Fashionbest |
| Fashionn Hat |
| FIIICDFB |
| Four Five-159 Store |
| FXPH |

| NAMED DEFENDANTS SUBJECT TO THIS ORDER |
|---|
| Gear Garment |
| GLEC |
| GNN FASHION |
| great poster |
| Guangzhou Fuyue Qianchao Trade Co., Ltd. |
| Guifu Toy Store |
| Gunot DIY |
| hahahai |
| hanhan889 |
| Happy Art Store |
| Happy Canvas |
| happy-hour0 |
| Haus Der Kunst Store |
| HDJFFF |
| HEIKA ALILI QTPC13 Store |
| Hershuing |
| HGH Fashion Department |
| HGUJHUYPP |
| Home Art Window Store |
| HS LZ FUNNY |
| HYXASDFF |
| IAEFJI |
| ibsstyle |
| jflasfdshlkhkjhafjhkahfafjfhklajhfjlhfkljs |
| Jiujiang Muya Crafts Co., Ltd. |
| JJJ Menswear |
| JUNHUANYI |
| JUNMEINI |
| kyra picture |
| LAYY Wall Art |
| Leading Creativity |
| LIN ART ROOM |
| LINSHAN C |
| lion WANG |
| Live ustory Store |
| lkyysh wholesale goods |

| NAMED DEFENDANTS<br>SUBJECT TO THIS ORDER |
| --- |
| LQHAAMN |
| Lucky Colorful Dawn |
| LuckyGain 999 Store |
| lunabearsgear |
| Luokiqi Store |
| Luquan Aizhou E-Commerce Store |
| LZQYOLO |
| Make people happy |
| Mens wardrobe four |
| Min Jiuding F |
| Minjiuding J |
| Modern Closets |
| mountainhill |
| Mukerui |
| Music Wardrobe Store |
| Mystical Treasure Local |
| Nanning Aisy Import And Export Co., Ltd. |
| NCREEA |
| NENGBOA |
| Nestoria |
| Ningbo Hepburn Arts And Crafts Co., Ltd. |
| NoDiDi |
| Oil painting Xiao Wang |
| PINGWEIER |
| Printifyt shirt |
| Puswear |
| Quadruple Wage Store |
| QUEJINYU |
| Rebecca Poster Art House |
| REN-Displate Metal Poster Store |
| Rosy7（lnst.）Store |
| Ruicai Store |
| Shang Yun Lai |
| Shiny Fish Store |
| Shop5244223 Store |
| Shop5259129 Store |

| NAMED DEFENDANTS<br>SUBJECT TO THIS ORDER |
| --- |
| Shop1102419444 Store |
| Shop1103471283 Store |
| Shop1103676120 Store |
| Shop1103705150 Store |
| Shop1103784212 Store |
| Shop1103858077 Store |
| Shop1103874220 Store |
| Shop1103996613 Store |
| Shop1103996917 Store |
| Shop1104036695 Store |
| Shop1104053983 Store |
| Shop1104071624 Store |
| Shop1104086649 Store |
| Shop1104113394 Store |
| Shop1104119758 Store |
| Shop1104143287 Store |
| Shop1104211807 Store |
| Shop1104273785 Store |
| Shop1104353192 Store |
| Shop1104405696 Store |
| Shop1104631768 Store |
| Shop1104653609 Store |
| Shop1104657645 Store |
| Shop1104661074 Store |
| Shop1104682344 Store |
| Shop1104697292 Store |
| Sichuan Chendang Technology Co., Ltd. |
| Slight colds |
| Snazzy Stash |
| Star Printful |
| SuperBackdrop |
| Swan Dream Art Canvas Painting Store |
| SXiaoyna Store |
| T-10 Lin050 Store |
| TEES HOLIC Store |
| Tempered under sunlight |

| NAMED DEFENDANTS SUBJECT TO THIS ORDER |
|---|
| TEN SHIRT |
| Tengxu Animation Toy Store |
| The Stylish Mens Wardrobe |
| Three male lions |
| TomiK |
| Txueone |
| U Money comes from the old shopkeeper |
| uduannus |
| USET Store |
| UUSTEE Store |
| VERDANTIA ZENITHFLOWLUMIVISTA |
| Warm Day Art Store |
| WH WALL ART |
| Wild lvy FemmeVogue |
| Wilson Decor |
| Winters Solstice |
| WonderfulALL |
| XAZV ART |
| XCHMall |
| XMMHK |
| XY Apparel |
| Y3M MONEY Store |
| Yaaaang Jiannnn Meeeei |
| Yi Mawei DIY |
| yingjun515 |
| Yiwu Jing Lan Art & Crafts Co., Ltd. |
| Yiwu Rui Painting Crafts Co., Ltd. |
| you18755you1 |
| YXYM fashion |
| yzmerkj |
| Zhanguod |
| ZZJQ Art SHOP |
| ZZRBNVV |